**SAMMY'S OF MOBILE, LTD., and Sammy's Management Company, Inc., Plaintiffs,**

v.

**CITY OF MOBILE, Defendant.**

**Civil Action No. 96–0176–BH–M.**

United States District Court, S.D. Alabama, Southern Division.

March 6, 1996.

Donald M. Briskman, Mobile, AL, Luke Charles Lirot, Lirot & Dolan, Tampa, FL, for Sammy's of Mobile, Ltd., Sammy's Management Company, Inc.

Roderick P. Stout, Mobile, AL, for City of Mobile.

## ORDER

HAND, Senior District Judge.

■ This action is before the court on plaintiffs' motion for a temporary restraining order (TRO)[1] against the city of Mobile enjoining it from enforcing a recently enacted ordinance banning, among other things, topless dancing in establishments licensed to sell alcoholic beverages. The plaintiffs own and manage Sammy's, an ABC licensee which offers its patrons a combination of adult beverages and bare-breasted female dancing as entertainment.

The plaintiffs filed a complaint and a motion for a temporary restraining order in the Circuit Court of Mobile County on February 22, 1996. Before the Circuit Court had an opportunity to rule on the TRO motion, the action was removed to this court on February 26, 1996 pursuant to 28 U.S.C. § 1441. Since the case arises under a number of federal constitutional issues, this court has original subject matter jurisdiction over the claim pursuant to 28 U.S.C. § 1331.

The action came on for hearing on February 29, 1996. At the hearing, both parties requested additional time to provide the court with supplemental briefs on specified legal issues.[2] The court granted the parties until Tuesday, March 5, 1996 to file additional legal argument. By previous arrangement of the parties, the defendant agreed to forego enforcement of the ordinance until this court could make a ruling upon the issues raised by the TRO motion.

■ "To be entitled to a TRO, a movant must show: (1) a substantial likelihood of ultimate success on the merits; (2) the TRO is necessary to prevent irreparable injury; (3) the threatened injury outweighs the harm the TRO would inflict on the non-movant; and (4) the TRO would serve the public interest." *Ingram v. Ault,* 50 F.3d 898 (11th Cir.1995).[3] The purpose of a TRO is to maintain the status quo between the parties and to prevent irreparable harm pending a

1. The parties have extensively briefed the issues raised by this TRO motion, they have presented arguments and evidence to the court at a hearing, and the city has voluntarily withheld enforcement of the ordinance pending this order. Consequently, the TRO motion has the effect of a motion for a preliminary injunction. *See Haitian Refugee Center, Inc. v. Baker,* 950 F.2d 685 (11th Cir.1991).

2. Defendant originally objected to the granting of additional time for plaintiff to further brief the due process issue; however, counsel for the defendant removed his objection upon learning of the court's desire to see further briefing on the takings issue.

3. Virtually the same standards apply to preliminary injunctions.

trial on the merits of the case; it is not a decision on the ultimate disposition of the law suit. *McArthur v. Firestone,* 817 F.2d 1548 (11th Cir.1987). The decision to grant a TRO is within the broad discretion of the trial judge. *Majd–Pour v. Georgiana Community Hospital, Inc.,* 724 F.2d 901 (11th Cir.1984).

In support of his TRO motion, plaintiff raises several constitutional challenges to the ordinance: violation of freedom of speech under the First Amendment; vagueness; taking property without just compensation in violation of the Fifth Amendment; and violation of substantive and procedural due process under the 14th Amendment. The plaintiff also claims legal reliance upon the city's previous granting of its liquor license under the doctrine of equitable estoppel. The court will begin with an analysis of the plaintiff's First Amendment claims.

### A. FREEDOM OF SPEECH

■ The First Amendment to the U.S. Constitution states:

4. The First Amendment has been applied to the States by action of the Fourteenth Amendment, despite evidence that the ratifiers of the Fourteenth Amendment did not intend for the First Amendment to be so applied. *See* McClellan, J., *Christianity and the Common Law,* in Joseph Story and the American Constitution, at p. 154 ("A conclusive argument against the incorporation theory, as least as respects the religious provisions of the First Amendment, is the 'Blaine Amendment' proposed in 1875.")

5. It is doubtful that the Framers of our Constitution ever would have considered dancing in the nude at the local bar to be "speech" entitled to First Amendment protection. The language of the amendment is clear; it prohibits infringement upon "freedom of *speech*" (emphasis added). On its face, the free speech clause of the First Amendment does not reach conduct.

The judge-made distinction between conduct which involves enough of a communicative element to be protected by the First Amendment and that which does not is not always readily ascertainable, if ever. The result often is an unwarranted micro-management of the law of expression.

The raising of an eyebrow is an action that communicates an idea. The aroma of good food conveys a message also and can even invite a powerful human response. Indeed, all voluntary action can imply some sort of an idea, even if it is only the view that such action is appropriate to

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.[4]

Although the free speech clause of the amendment makes no mention of protecting conduct from congressional regulation, the Supreme Court has held on numerous occasions that, "[W]here the government prohibits conduct precisely because of its communicative attributes, we hold the regulation unconstitutional." *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 577, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991) (Scalia, J., concurring).

■ The Supreme Court recently held that barroom nude dancing is protected by the first amendment, even though the statute at issue was a general prohibition of nudity in public places and not directed against nude dancing *per se.*[5] *Glen Theatre, Inc., id.*

the circumstances. But to call all voluntary activity "expressive" for First Amendment purposes would reduce the concept of expression to the point of being meaningless. *Barnes v. Glen Theatre, Inc.,* 501 U.S. at 581, 111 S.Ct. at 2468 (Souter, J., concurring). How is a judge to decide when First Amendment protection attaches?

In the context of nude dancing, it has been suggested that when dancing is done as a performance and where the dancer is nude or nearly so, a feeling of eroticism and an endorsement of erotic experience is expressed. The combination of nudity with the expressive activity of performance dance serves to enhance the force of the activity's expressive nature. *Id.,* at 581, 111 S.Ct. at 2468 (Souter, J., concurring).

Other forms of dancing may express some sort of feeling or meaning other than eroticism. Does this entitle them to First Amendment protection? If not, why not? *See e.g., Dallas v. Stanglin,* 490 U.S. 19, 109 S.Ct. 1591, 104 L.Ed.2d 18 (1989) (recreational dance not entitled to First Amendment protection).

Is there anything in the First Amendment that entitles eroticism conveyed by nude dancing to more protection than any other message or idea conveyed by different human conduct? When judges make these distinctions, they inevitably make some judgment upon the content of the conduct's message.

If it is not the content, but the force of the message that we view as important, would the

at p. 565–566, 111 S.Ct. at p. 2459–2460. In so holding, the Supreme Court relied upon several earlier cases which had suggested that certain types of naked dancing contain enough of a communicative element to be protected to some extent by the First Amendment. In *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932, 95 S.Ct. 2561, 2568, 45 L.Ed.2d 648 (1975), the court characterized customary nude barroom dancing as potentially having the "barest minimum" of First Amendment protection in some circumstances. (Citing *California v. LaRue*, 409 U.S. 109, 118, 93 S.Ct. 390, 397, 34 L.Ed.2d 342 (1972)). *See also Schad v. Mount Ephraim*, 452 U.S. 61, 66, 101 S.Ct. 2176, 2181, 68 L.Ed.2d 671 (1981) (stating that, "as the state courts in this case recognized, nude dancing is not without its First Amendment protections from official regulation.") (citations omitted). The court in *Glen Theatre* was careful to limit the scope of its holding, stating that, "nude dancing of the kind sought to be performed here is expressive conduct within the outer perimeters of the First Amendment, though we view it as only

marginally so." *Glen Theatre, Inc.*, 501 U.S. at 566, 111 S.Ct. at 2460.[6]

■ A determination that the First Amendment applies to the topless dancing at issue in this case is only the first prong of the court's inquiry. The second prong entails what level of protection is to be afforded the expressive conduct at issue.[7]

■ In *LaRue*, the Supreme Court concluded that, "the broad powers of the States to regulate the sale of liquor, conferred by the Twenty-first Amendment, outweighed any First Amendment interests in nude dancing and that a State could therefore ban such dancing as part of the liquor license control program." *Doran*, 422 U.S. at 932–933, 95 S.Ct. at 2567–2569. "Whatever artistic or communicative value may attach to topless dancing is overcome by the State's exercise of its broad powers arising under the Twenty-first Amendment."[8] *New York State Liquor Authority v. Bellanca*, 452 U.S. 714, 718, 101 S.Ct. 2599, 2602, 69 L.Ed.2d 357, 361 (1981).

■ The State of Alabama has delegated its police powers recognized by the

result in *Dallas* have been different if the dancing participants there were allowed to dance naked? Surely the message conveyed by recreational dancing takes on added force and even added meaning when the parties do so in the nude.

Without clear cut distinctions between laws which seek to regulate conduct and laws which seek to regulate speech, the courts will continue to be asked to micro manage the law of expression in ways they are ill-equipped to do. Constitutional amendment, not judicial rewriting, is the remedy designed by our Framers for those not satisfied by straightforward interpretation of the Constitution.

6. According to the Supreme Court, not all dancing is entitled to protection. The Supreme Court has held that recreational soul and "funk" music dancing is not protected by the First Amendment. *Dallas v. Stanglin*, 490 U.S. 19, 109 S.Ct. 1591, 104 L.Ed.2d 18 (1989). Aerobic dancing likewise appears to have no first amendment protection. *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 581, 111 S.Ct. 2456, 2468, 115 L.Ed.2d 504 (Souter, J., concurring). Additionally, nude dancing that constitutes obscenity would not be entitled to first amendment protection.

7. Despite the plain wording of the First Amendment, the courts have created multiple tiers of scrutiny to apply to regulations affecting freedom

of speech. Under the court's jurisprudence, a judge is required to determine the relative importance of the government's interest in a regulation affecting speech (or expressive conduct) and to determine whether such regulation is the least restrictive possible to advance or protect the governmental interest. Thus the courts must balance the parties' competing interests in order to determine which side will prevail. In many cases, even when the court believes a First Amendment interest is at stake, the courts have held that the regulation is valid because of the relative importance of the government's interest in the regulation. This sort of balancing is not only unfaithful to the plain words of the First Amendment, it invites and necessitates judicial policy making that is not a valid exercise of the Article III power.

8. Upon passage of the federal Constitution, the States retained their general police power over health, safety, welfare, and morals. *See e.g.*, The Federalist, # 45. The application of the police power may be limited or prohibited by various provisions of the Constitution, but the police power itself remains with the States. The Twenty-first Amendment does not confer upon the States alcohol-regulating authority *per se;* it merely makes clear that other sections of the Constitution, *e.g.*, the Commerce Clause, do not serve to limit the States' legitimate exercise of their own police power in the manner they ordi-

Twenty-first Amendment to its localities. *See Lanier v. City of Newton,* 842 F.2d 253 (11th Cir.1988) (see appendix, answer to certified question). As result, the Mobile ordinance falls within the long line of cases upholding the states' authority to prohibit nude dancing in clubs licensed to sell alcohol. *See Bellanca; City of Newport, Kentucky v. Iacobucci,* 479 U.S. 1047, 107 S.Ct. 913, 93 L.Ed.2d 862; *Lanier, Fillingim v. Boone,* 835 F.2d 1389 (11th Cir.1988); *Grand Faloon Tavern, Inc., v. Wicker,* 670 F.2d 943 (11th Cir.1982). Consistent with this authority, Mobile's interest in regulating nudity in places where alcohol is served outweighs whatever First Amendment interest that applies to nude dancing.[9]

### B. LEGISLATIVE FINDINGS

Plaintiffs strenuously argue that the ordinance is unconstitutional because the factual basis for the preamble [10] has been questioned. Plaintiffs further argue that the city hasn't met its burden of making sufficient legislative findings which demonstrate the ill effects that accompany the commingling of nudity and alcohol in establishments licensed to sell liquor. Plaintiffs urge the court to apply the judicial scrutiny applied in *Grand Faloon* and *Krueger v. City of Pensacola,* 759 F.2d 851 (11th Cir.1985). However, those cases involved ordinances enacted pursuant to the municipality's police power; the broader police power of the State involving alcohol regulation recognized and protected by the Twenty-first Amendment was not at issue. The Supreme Court in *Bellanca* held that "even if explicit legislative findings were required to uphold the constitutionality of this statute as it applied to topless dancing," the legislative purposes set out in a memorandum accompanying the statute were sufficient. *Bellanca,* 452 U.S. at 717–718, 101 S.Ct. at 2601–2602. In *Lanier,* the court noted:

> Because the ordinance in this case was adopted pursuant to authority derived from the twenty-first Amendment, rather than from the municipality's police power, "extensive and detailed legislative findings based upon substantial evidence that the prohibited activity contributed to criminal activity in the county are not required."

*Lanier,* 842 F.2d at 255 (citing *Fillingim,* 835 F.2d at 1397). If legislative findings are at all necessary when states or municipalities act pursuant to the Twenty-first Amendment, the requirement is minimal and easily met by the city's findings set forth in the preamble to the ordinance. The plaintiffs arguments in this regard are without merit.

### C. DUE PROCESS

Plaintiffs next assert that the City Council's manner of enacting the ordinance deprived them of procedural due process.[11] Specifically, plaintiffs contend that they were denied notice of the meeting where the ordinance was adopted and an opportunity to be heard. Plaintiffs make no contention that

---

narily might if the Twenty-first Amendment did not exist.

9. Plaintiffs assert that the four-part test developed in *U.S. v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968) is applicable to the ordinance in this case. *O'Brien* held that expressive conduct can be validly regulated if (1) the regulation is a legitimate exercise of authority, (2) it furthers an important or substantial governmental interest, (3) the governmental interest is unrelated to the suppression of free speech, and (4) the restriction of first amendment rights is no greater than necessary to further the government's interest. However, *O'Brien* does not apply because the ordinance here was passed pursuant to Mobile's authority to regulate the sale of alcoholic beverages pursuant to the Twenty-first Amendment. *See California v. LaRue,* 409 U.S. at 116, 93 S.Ct. at 396.

10. The preamble to the Ordinance states:

WHEREAS, the City Council of the City of Mobile, Alabama, finds and declares that nudity and sexual conduct and depiction thereof, coupled with alcohol in public places, encourages undesirable behavior and is not in the interest of the public health, safety, and welfare.

WHEREAS, the Council has chosen to avoid the disturbances associated with mixing alcohol and nude dancing by means of a reasonable restriction upon establishments which sell spirituous or vinous liquors or malt or brewed beverages.

NOW THEREFORE, the Council adopts this Ordinance pursuant to the powers under the Twenty-first Amendment to the Constitution of the United States delegated to it by the State of Alabama.

11. Plaintiffs also contend that the ordinance violates their substantive due process rights. This claim has no merit.

the manner in which the City Council passed the ordinance in question violated any statutory notice requirements.

 The Fourteenth Amendment provides that no State shall deprive a person of life, liberty, or property without due process of law. Procedural due process refers to the requirement that an individual be given notice and an opportunity to be heard before any judicial, executive, or administrative action deprives him of a liberty or property interest. Procedural due process typically does not apply to legislative action because it is assumed that the "process" which is "due" is merely the employment of the procedures necessary to validly pass the law in question. For example, Congress may not pass a bill without a majority vote in both houses. There is no constitutional requirement that Congress or state legislatures provide notice and an opportunity to be heard to individuals whose liberty or property is affected by legislative action. If the people are unhappy with the manner in which Congress enacts legislation, their remedy is with the ballot box, not the courthouse.

 There is no question that the City Council exercised legislative authority in passing the ordinance. The Alabama Supreme Court has made clear that Alabama has delegated its police powers pursuant to the Twenty-first Amendment to its municipalities. *See Lanier v. City of Newton,* 518 So.2d 40 (Ala.1987). The ordinance itself states that the City is exercising such power. The ordinance has the effect of any general law; it is not subject to the requirements of procedural due process.[12] *Cf. Crymes v. DeKalb County, Ga.,* 923 F.2d 1482, 1485 (11th Cir.1991) ("It is clear that if the Commissioners were performing a legislative function in voting to deny Crymes a development permit, they would be entitled to absolute immunity from suit").

## D. REMAINING CLAIMS

 Plaintiffs equal protection claim raises no suspect classification. Because the ordinance was passed pursuant to the state's legitimate police powers recognized by the Twenty-first Amendment and delegated to the municipalities, this claim is additionally unlikely to succeed on the merits.

Plaintiffs argue that the ordinance is unconstitutionally vague, but have made no attempt, other than conclusory statements, to demonstrate how the ordinance is vague. Upon reviewing the plaintiffs' arguments and the ordinance itself, the court concludes that the plaintiffs have not demonstrated any likelihood of success on the merits of this claim.

 Regarding plaintiffs' equitable estoppel claim, the Alabama Supreme Court has held that the legislature has the right under the State Constitution to change the laws regulating intoxicating liquors at any time. *Ebony Club, Inc. v. State of Alabama,* 318 So.2d 282 (1975). The court concludes that the plaintiffs have not demonstrated a likelihood of success on the merits of this claim.

 Finally, plaintiffs appear to have waived their fifth amendment takings claim. *See* Plaintiffs' Supplemental Memorandum of Law in Support of the Issuance of a Temporary Restraining Order or Preliminary Injunction, at p. 5 ("Plaintiffs' concede that because, under Alabama law, there is no property interest in an alcoholic beverage permit, there can be no just compensation claim"). Even without this waiver, the court does not believe that the plaintiffs have met their burden of showing a likelihood of prevailing on the merits of this claim.

Plaintiffs have made an initial showing that their business will suffer no small amount of economic harm if the ordinance is enforced. However, the Supreme Court has made clear that regulations which deprive a property owner of only a portion of the economic value of his land do not rise to the level of a "taking" under the Fifth Amendment. *See*

---

12. Even if the ordinance were subject to attack on procedural due process grounds, the court does not believe that the plaintiffs would be likely to prevail on the merits of the issue of how much process is due. The plaintiffs not only had notice of the hearing where the ordinance was passed, but were actually present, heard testimony from individuals who opposed its passage, and declined to speak personally against the measure apparently on the advice of the ordinance's sponsor. Clearly, at least some notice and opportunity to be heard was given by the City Council.

**1124**

*Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). The plaintiffs have not demonstrated that their property will be rendered worthless by the ordinance. Further, the plaintiffs claim of irreparable injury with regard to this claim is likewise suspect since the recovery allowed for a "taking" is "just compensation," for which there is an adequate remedy at law.

For the foregoing reasons, the plaintiffs' motion for a temporary restraining order or preliminary injunction is hereby **DENIED.**

**SO ORDERED.**