**ONE TOMA, INC., d/b/a The Shake Home Lounge, Plaintiff,**

v.

**Joe HEIDE, Defendant.**

**No. 90–0641–CV–W–1.**

United States District Court, W.D. Missouri, W.D.

March 4, 1991.

Richard T. Bryant, Janet Baker, Kansas City, Mo., for plaintiff.

Dennis Lee, Kansas City, Mo., for defendant.

## ORDER

WHIPPLE, District Judge.

Before this court is defendant's Motion for Judgment on the Pleadings and/or for Summary Judgment, filed August 6, 1990. Plaintiff filed its response on September 10, 1990. Defendant filed his reply on September 19, 1990. For the reasons set forth below, defendant's motion will be granted as a Motion for Summary Judgment.

## I. STATEMENT OF FACTS

On July 16, 1990, plaintiff One Toma, Inc. ("One Toma") filed a complaint for injunctive and declaratory relief and damages for alleged violations under 42 U.S.C. § 1983 against defendant Joe Heide ("Heide"), acting as Kansas City Supervisor of Liquor and Amusement Control

("Supervisor of Liquor Control").[1] One Toma claims that actions taken by Heide, pursuant to § 4.61 of the Kansas City Code of General Ordinances, are in violation of its First, Fifth, and Fourteenth Amendment rights under the United States Constitution. One Toma requests that the court declare § 4.61 unconstitutional on its face or as applied and permanently enjoin Heide from exercising his discretion to issue licenses pursuant thereto.

One Toma was issued a sales-by-drink license for alcoholic beverages on January 26, 1990. Prior to obtaining the license, a hearing on One Toma's application was held on December 27, 1989, in compliance with §§ 4.57(b) and 4.61 of the Kansas City, Mo. Code of General Ordinances, Ch. 4, art. X (1978).[2]

During the hearing, Mary Bonomo, as president of One Toma, was specifically questioned about the type of entertainment the bar intended to provide.[3] While Ms. Bonomo was cross examined by the assistant city attorney, the following exchange took place:

Q. [Assistant city attorney] The next question, and maybe the next two questions [in the license application] are the ones everybody is waiting to hear about, indicate go-go dancers, and you've indicated no, and your initials are by that?

A. [Ms. Bonomo] That's correct.

Q. Okay. So is it a fair statement that you have no intention of having go-go dancers on the premises there?

A. That's correct.

Q. And you understand that if this license was granted and at a later date you attempted to put go-go dancers on [sic] there, that could be a change of conditions that could result in the revocation of this license?

A. I understand that.

Q. Okay. Just—the reason I'm saying this is I don't want any misunderstanding at a later date as to where we're headed with this. Is that fair?

A. That's fair.

Transcript of December 27, 1989 Hearing before the Supervisor of Liquor and Amusement Control at 40–41.

---

1. On the same day One Toma filed its complaint, it also filed an Application for Temporary Restraining Order and Preliminary Injunction seeking an order to prohibit Heide from revoking or suspending One Toma's liquor license and further enjoining him from prohibiting One Toma from having exotic dancers on its licensed premises. On the following day, July 17, 1990, the court held a hearing on One Toma's application. At the conclusion of the hearing the court denied one Toma's request for a temporary restraining order.

2. Section 4.57(b) provides that
[w]here the required number of consents does not exceed two (2), and the applicant has obtained only one, the supervisor of liquor and amusement control shall ... conduct a hearing to determine whether, after all other requirements of the applicant have been met, the applicant's proposed location shall be approved.
In evaluating whether an applicant shall be entitled to receive a sales-by-drink license, § 4.57(b) states that the Supervisor of Liquor Control
shall consider evidence as to the type of license applied for, *the kind of other business, if any, applicant proposes to engage in on the proposed premises in conjunction with his liquor business,* the nature and characteristics of the area involved, the population of the

area, the number of nonresidents of the area served by the area, the future growth potential of the area, the number of licensed liquor premises within the area, comparison of the area with similar areas within the city, the effect on adjacent properties and their uses, and any other evidence pertinent to the inquiry.
(Emphasis added). Section 4.61 generally outlines the discretion the Supervisor of Liquor Control has in issuing a liquor license or ruling on an application for change of location or classification of license. Therein, it provides that the supervisor
shall have the authority to take into consideration the location of the proposed business and the density of alcoholic beverage licenses in the area for which a license is sought, and shall have authority to refuse or grant such license *when in his judgment such issuance shall not be in the best interest of the locality involved.*
(Emphasis added).

3. This line of questioning likely was sparked by the way Ms. Bonomo filled out the portion of the application that asks what type of entertainment is being considered by the applicant. After "Go Go Dancers," Ms. Bonomo wrote "yes." She subsequently crossed out the word and placed "no" above it.

Heide's views about the type of entertainment One Toma proposed to offer were documented in his letter approving One Toma's request for a liquor license. Heide wrote:

> The preponderance of opinion expressed throughout the testimonials ... was that entertainment expressed as "go go" dancers, exotic dancers, topless dancers or striptease dancers was not desired and would not be in the best interest of the business community or the neighborhood. The applicant, Mary Bonomo, responded repeatedly and unequivocally that she had no intention now, or in the future, of introducing that kind of entertainment. She requested in her application only for bands to play country/western music. The Supervisor finds that a business offering entertainment of country and western music, along with alcoholic beverages, would not exceed the uses permitted in the zoning determination.

Letter of January 26, 1990 at 6.

Less than six months after One Toma was issued a liquor license, Ms. Bonomo advised Heide in a letter dated July 2, 1990 that One Toma intended to offer "go-go dancing" and "exotic dancing" at the bar. In a letter dated July 9, 1990, Heide advised Ms. Bonomo and One Toma that the proposed entertainment "was neither applied for ... nor approved in my order granting your license" and ordered One Toma to *"cease and desist in the offering of this entertainment immediately."* (Emphasis in original). One Toma complied with the letter's directive and filed this action.[4]

## II. STANDARD OF REVIEW

A movant is entitled to summary judgment under Fed.R.Civ.P. 56(c) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

In the instant case, the court finds that there are no factual issues in dispute. Although One Toma suggests that many "disputed fact issues" remain which preclude granting summary judgment for Heide, all the issues it raises involve questions of law for the court to decide.[5] Those issues challenge the constitutionality of § 4.61 on its face and as applied. In the event the court finds One Toma's objections unpersuasive, Heide will be entitled to summary judgment as a matter of law.

## III. DISCUSSION

One Toma raises several objections to § 4.61 of the Kansas City Code of General Ordinance. Specifically, One Toma argues 1) that § 4.61 is unconstitutional on its face

---

4. Sometime after receiving the cease and desist letter, One Toma sought formal permission of the Supervisor of Liquor Control to offer exotic dancing. This request was denied. It is unclear whether One Toma sought permission prior to or after filing this lawsuit.

5. The issues of law that One Toma mislabels "disputed facts" are: 1) whether § 4.61 is derived from the Twenty-first Amendment; 2) whether Heide acted arbitrarily, capriciously, and unreasonably in prohibiting One Toma's from offering exotic or go go dancing; and 3) whether One Toma was provided with due process prior to the infringement of its protected rights.

One Toma also asserts that the facts surrounding the issuance of One Toma's liquor license are of "no consequence in determining the merits of Plaintiff's claims regarding the constitutionality of Defendant's subsequent actions." Plaintiff's Response at 6. Again, One Toma's objection does not involve a factual dispute. The objection raises an issue about the degree of weight the court should give the sequence of events leading up to One Toma's license approval.

Alternatively, One Toma argues that Heide's motion should be treated as a motion to dismiss for failure to state a cause of action. In support thereof, One Toma argues that the documents supporting Heide's motion for summary judgment have not been certified or sworn, pursuant to Fed.R.Civ.P. 56(e). Heide's supporting documentation includes a copy of One Toma's license application affidavit, the letter approving One Toma's license application (written by Heide), and a partial transcript of the hearing on One Toma's license application. Through Heide's affidavit, he attests to the authenticity of these documents. The court finds that Heide's affidavit adequately certifies the documents, in accordance with Rule 56(e).

because it grants Heide unlimited legislative discretion to issue or deny a liquor license; and 2) that § 4.61 is unconstitutional as applied because Heide acted arbitrarily, capriciously and unreasonably in exercising his discretion under the ordinance.[6]

### A. *Section 4.61 is Unconstitutional on its Face*

In arguing that § 4.61 is facially unconstitutional, One Toma relies on the fact that the ordinance contains "no policy, gauge, standards or uniformity" for which the Supervisor of Liquor Control can rely on in exercising his or her discretion to issue a liquor license. The result being that the ordinance "clothes the administrative agency with arbitrary and undefined discretion." Complaint at 8.

■ Generally speaking, an ordinance which vests discretion in administrative officials must include standards for their guidance. *State ex rel. Payton v. Riverside,* 640 S.W.2d 137, 141 (Mo.Ct.App.1982); *Clay v. City of St. Louis,* 495 S.W.2d 672, 675 (Mo.Ct.App.1973). This rule does not apply to the exercise of substantive legislative functions by a political and governing body. *Riverside,* 640 S.W.2d at 141. Missouri courts have recognized three exceptions to the general rule regarding delegation of authority: 1) where the ordinance requires the vesting of discretion in an administrative official and it is difficult or impracticable to set out a comprehensive rule; 2) where the discretion "relates to the administration of a police regulation and is necessary to protect the public morals, health, safety and general welfare;" and 3) where personal fitness may be a factor to take into consideration. *Clay,* 495 S.W.2d at 676. *See also Vaughn v. Ems,* 744 S.W.2d 542, 548 (Mo.Ct.App.1988); *Peppermint Lounge, Inc. v. Wright,* 498 S.W.2d 749, 752–53 (Mo.1973).

■ In addition to the three exceptions, it has been noted that the validity of an ordinance vesting discretion will depend in large measure on the nature and type of activity being regulated. With respect to the regulation of intoxicating liquor sales, Missouri courts consistently have upheld ordinances or regulations pertaining to their trafficking. *Vaughn,* 744 S.W.2d at 547 (citing *Queen of Diamonds, Inc. v. McLeod,* 680 S.W.2d 289 (Mo.Ct.App.1984); *Mainstreet Enterprises v. Supervisor of Liquor Control,* 665 S.W.2d 641 (Mo.Ct.App.1984); *Peppermint Lounge, Inc. v. Wright,* 498 S.W.2d 749 (Mo.1973)). This has been particularly the case when the provisions address the issuance or renewal of a liquor license. *Vaughn,* 744 S.W.2d at 547. The courts' deference stems from the view that the liquor business is not like other commercial operations. No one has an inherent right to sell intoxicating liquor. Rather, those who engage in the sale of liquor have "no legal rights except those expressly granted by statute and by license." *Id. See also Zenco Development Corp. v. City of Overland,* 843 F.2d 1117, 1119 (8th Cir.1988) (citing *Vaughn* ).

■ In view of the deference Missouri courts normally give liquor regulations, this court does not find § 4.61 facially invalid. One Toma's contention that § 4.61 fails to sufficiently advise the director of liquor control on how to exercise his or her discretion is not fatal to the ordinance's validity. Section 4.61 falls under two of the three exceptions noted above. First, the ordinance relates to a police regulation necessary for the protection of the public health, safety and general welfare. Second, the discretion provided under the ordinance—to grant or deny a liquor license— normally would involve a multitude of factors that cannot be reduced to a comprehensive rule.

Although § 4.61 specifically directs the Supervisor of Liquor Control to consider the location of the license applicant and the number of licenses already issued in the surrounding area, it concludes by stating that the supervisor may refuse to issue a license "when in his judgment such issuance *shall not be in the best interest of the locality involved.*" (Emphasis added).

---

**6.** The other issues plaintiff raises in its Complaint are without merit and need not be addressed in deciding defendant's motion for summary judgment.

The ordinance's expansive language allows the Supervisor of Liquor Control to issue a finding that considers all the pertinent factors likely to arise in an application for a liquor license. Similarly expansive language has passed constitutional muster in Missouri state court. *See Vaughn,* 744 S.W.2d at 544 n. 1 (ordinance at issue provided that the city council could refuse to issue a liquor license if "it is not advisable to grant it to the applicant, or if the proposed location is unsatisfactory, or *it is not in the best interests of the city to grant another license.*" (Emphasis added)).

### B. *Section 4.61 is Unconstitutional as Applied*

In arguing that § 4.61 is unconstitutional as applied, One Toma alleges that Heide's exercise of discretion was arbitrary and capricious. One Toma gives three reasons for finding Heide's conduct arbitrary and capricious. First, One Toma argues that Heide's exercise of discretion was improper because § 4.61, "by its very terms," is inapplicable to a request for a change in entertainment. The ordinance specifically sets forth that it pertains to the issuance of a license and to changes in the location or classification of a license. One Toma next argues that Heide's refusal to allow exotic dancing entertainment—pursuant to its authority under § 4.61—imposed requirements additional to those set out under § 4.68(k)(6). Section 4.68(k)(6) sets forth the physical requirements a licensee must comply with when providing exotic dancing entertainment. Finally, One Toma argues that Heide's cease and desist letter was "an arbitrary and capricious attempt to divest the Plaintiff of its property and free speech interests without adequate procedural safeguards." Complaint at 7. The court will address each of One Toma's assertions.

### (1) Section 4.61 is Inapplicable to Entertainment Changes

One Toma correctly states that § 4.61, by its terms, does not pertain to changes in entertainment. However, this court finds that Heide's exercise of discretion must be evaluated in the context of both § 4.61 and § 4.57(b) *and* in light of the circumstances surrounding One Toma's original request for a liquor license.

■ Section 4.57(b) applies when an applicant does not obtain the necessary number of consent forms from residents living in the area surrounding the applicant's proposed site—as was the case when One Toma applied. For purposes of this discussion, the pertinent language in § 4.57(b) states that the Supervisor of Liquor Control *"shall* consider evidence as to ... the *kind of other business,* if any, applicant proposes to engage in on the proposed premises in conjunction with his liquor business ... [as well as] the effect on adjacent properties and their uses, and any other evidence pertinent to the inquiry." (Emphasis added). This court construes "kind of other business" to include what type of entertainment, if any, the applicant proposes to provide on its premises.

■ Based on the transcript of One Toma's license hearing and Heide's letter of January 26, 1990, it is apparent that One Toma was granted a sales-by-drink license to open a bar offering country and western music entertainment. It is equally apparent that Heide rejected *de facto* any prospective request by One Toma to provide exotic or go go dancing on its premises. During the hearing, Ms. Bonomo, as president of One Toma, was questioned at length by the assistant city attorney about whether One Toma planned to use go go dancers. Ms. Bonomo indicated that One Toma had no such plans, to which the attorney responded: "[Y]ou understand that if this license was granted and at a later date you attempted to put go-go dancers on [sic] there, that could be a change of conditions that could result in the revocation of this license?" Ms. Bonomo replied that she understood.

The comments in Heide's letter likewise support the view that any future request to offer go go dancing would be rejected out of hand. Heide indicated that go go or exotic dancing entertainment "was not desired and would not be in the best interest of the business community or the neighborhood.... The Supervisor finds that a business offering entertainment of country and

western music, along with alcoholic beverages, would not exceed the uses permitted in the zoning determination." Given the city attorney's and Heide's candid remarks, one reasonably can conclude that One Toma would not have obtained a license if it originally proposed to offer exotic dancing.

In light of the circumstances surrounding One Toma's original petition for a liquor license, and the language of § 4.57, Heide's refusal to allow go go dancing was neither arbitrary nor capricious. Heide's declination—although formally given to One Toma in July of 1990—was given informally to One Toma in January of 1990. This court does not believe that One Toma garnered a good faith belief that its request for a change in entertainment would be approved.

### (2) Exercise of Discretion Conflicts with § 4.67(k)(6)

■ One Toma's second reason for contending that Heide's exercise of discretion was exercised arbitrarily and capriciously is based on the assumption that § 4.68(k)(6) authorizes a licensee to offer exotic dancing. The court finds that the language of § 4.68(k)(6) does not comport with One Toma's interpretation.

Section 4.68(k)(6) is part of a larger section entitled "Disorderliness, Indecency or Obscenity Prohibited." The cited section merely states that exotic or striptease dancing is not permitted on licensed premises unless certain physical requirements are met (i.e. the location of stage must be within a certain distance from audience). The section says nothing about what a licensee must do to obtain approval to offer such entertainment. Given the limited scope of § 4.68(k)(6), the court concludes that Heide's exercise of discretion did not conflict with or contradict the language of § 4.68(k)(6). Therefore, there was nothing arbitrary or capricious about Heide's refusal to approve One Toma's request to use go go dancers.

### (3) Exercise of Discretion Violates One Toma's Property and Free Speech Interests

One Toma lastly contends that § 4.61 is unconstitutional as applied because Heide's letter ordering One Toma to "cease and desist" offering go go dancing was an improper attempt to divest One Toma of its property (liquor license) and free speech rights, in violation of One Toma's procedural due process rights.

Before One Toma may raise a procedural due process claim with respect to the liquor license, it must establish that it has protectable property interest in the license. *Zenco*, 843 F.2d at 1118. This court already has stated that a licensee has no inherent right to sell intoxicating liquor in the state of Missouri. Rather, the only interest one has with respect to the sale of liquor is that created by statute and license. *See, e.g., Vaughn*, 744 S.W.2d at 547; *Kehr v. Garrett*, 512 S.W.2d 186, 189 (Mo.Ct.App.1974).

■ Had Heide taken steps to revoke or suspend One Toma's license for providing go go dancing, One Toma would have been entitled to a hearing under § 4.7 of the Kansas City ordinance. The failure to give One Toma a hearing under these circumstances would have been a violation of One Toma's due process rights, as provided for under § 4.7. Because Heide did not attempt to revoke or suspend One Toma's liquor license, the provisions of § 4.7 were never triggered. One Toma voluntarily complied with Heide's cease and desist order and no further action was taken by Heide. Therefore, the court finds that there was no procedural due process violation with respect to the liquor license.

One Toma also contends that its free speech interests were violated by Heide's order to cease and desist. Throughout its pleadings, One Toma asserts that the First Amendment protects its right to offer exotic dancing. While the United States Supreme Court has stated that at least some forms of nude or exotic dancing fall within the constitutional protection of the First Amendment, it also has stated that the state—through its broad powers under the Twenty-first Amendment—may regulate the "times, places, and circumstances under which liquor may be sold." *New York State Liquor Authority v. Bellanca*, 452

U.S. 714, 715, 101 S.Ct. 2599, 2600, 69 L.E.2d 357, 360 (1981); *California v. La-Rue,* 409 U.S. 109, 118, 93 S.Ct. 390, 397, 34 L.E.2d 342, 352 (1972).

In support thereof, the United States Supreme Court has upheld laws and ordinances that have limited arguably protected speech. In so finding, the U.S. Supreme Court reasoned:

"Whatever artistic or communicative value may attach to topless dancing is overcome by the State's exercise of its broad powers arising under the Twenty-first Amendment. Although some may quarrel with the wisdom of such legislation ... the Twenty-first Amendment makes that a policy judgment for the state legislature, not the courts."

*Bellanca,* 452 U.S. at 718, 101 S.Ct. at 2602, 69 L.E.2d at 361. *See also Miller v. Civil City of South Bend,* 904 F.2d 1081, 1088–89 (7th Cir.), *cert. granted,* — U.S. ——, 111 S.Ct. 38, 112 L.E.2d 15 (1990) (after ruling that non-obscene nude dancing is protected expression under the First Amendment, the court of appeals acknowledged that a state retains the right to establish reasonable time, place, and manner restrictions vis-a-vis this speech); *Sanders v. City of Bridgeton,* 703 S.W.2d 76, 77 (Mo.App.Ct.1986) (state's power under the Twenty-first Amendment includes the power to regulate the "time, places and circumstances under which liquor may be sold and specifically includes the power to ban sexually oriented entertainment ... even where that entertainment is not obscene or pornographic.").

As One Toma correctly points out, this case differs from the cited cases in that the ordinance being challenged does not specifically prohibit nude or exotic dancing where intoxicating liquor is sold. However, these cases are instructive in so far as they find that a state may regulate protected speech in the course of exercising its Twenty-first Amendment powers.

The issue these cases do not resolve is whether Heide's refusal to allow One Toma to offer exotic dancing was an arbitrary and capricious exercise of his discretion under § 4.61. To resolve that question, the court must determine whether Heide had a reasonable basis for denying One Toma's request. *See, e.g., Vaughn,* 744 S.W.2d at 548 (unless the action taken is based on "personal bias, religious beliefs or other irrelevant factors, an ordinance vesting discretion is not invalid or infirm").

■ Based upon the testimony at One Toma's hearing and Heide's statements in his January letter, it appears to this court that Heide's denial was not arbitrary or capricious. Rather, Heide's action was based on the view that such entertainment would have a negative impact on the surrounding community. As noted earlier, § 4.57 instructs Heide to consider what type of entertainment ("other business") an applicant proposes to offer in conjunction with his licensed operation and § 4.61 authorizes him to refuse to issue a license when it "shall not be in the best interest of the locality involved." Heide's conclusion that exotic dancing would not be in the "best interest" of the business community or the surrounding neighborhood was well within the scope of his authority under § 4.61.

## IV.  CONCLUSION

For the reasons set forth in the preceding discussion, it is

ORDERED that defendant Joe Heide's Motion for Summary Judgment is granted. It is further

ORDERED that defendant's request for costs and disbursements, pursuant to 42 U.S.C. § 1988, is denied.