JUSTICE HUNT,
dissenting:
I dissent. There are many ways to express an opinion. Some people wrap themselves in the flag. Others burn it. But the majority of us silently regard it as an emblem of the freedom to express ourselves as we see fit. In dancing, there are many ways to express oneself, ways that the rest of us do not always regard as “our way.” Some put on a pair of tights and perform classical ballet. Others attire themselves in fancy dress and promenade on a ballroom floor. Jimmy Lee Laedeke dons a Groucho Marx bikini and two G-strings and prances before the patrons of The Club Carlin.
The Majority has danced the wild fandango in its zeal to ensure that Laedeke’s routine shall never again see the footlights of Billings. First, it holds that the City is not preempted by state liquor-control law from enacting an ordinance forbidding nude and semi-nude dancing in establishments that serve alcohol because the ordinance restrains conduct rather than the manufacture, sale and distribution of alcohol. In the next breath, it holds that the ordinance is constitutional under the Twenty-First Amendment because it is part of a liquor-control program.
The City cannot have it both ways. Either the ordinance was enacted as a part of a liquor-control program or it wasn’t. If it was part of a liquor-licensing scheme, the City could not enact the ordinance because the area of alcohol sales has been affirmatively subjected to state control. If it wasn’t part of a liquor-control program, *159 and instead was enacted solely to regulate conduct, the ordinance does not fit under the broad base of power granted to the states under the Twenty-First Amendment.
A state’s authority to regulate conduct under the Twenty-First Amendment is inextricably coupled with its authority to regulate the sale of alcohol. The amendment grants the State the ability to proscribe conduct because “[t]he [s]tate’s power to ban the sale of alcoholic beverages entirely includes the lesser power to ban the sale of liquor on premises where topless dancing occurs .’’ New York State Liquor Auth. v. Bellanca, 452 U.S. 714, 717, 101 S.Ct. 2599, 2601, 69 L.Ed.2d 357, 361 (1981). Strip away the alcohol sales, as the Majority does in the first part of the Opinion, and you have an ordinance that no longer fits under the lesser protection of the Twenty-First Amendment. The ordinance instead becomes a conduct-restricting regulation subject to the greater degree of scrutiny given to all laws impheating the First Amendment.
Thus, once the Majority determined that the City’s ordinance was not preempted by the State because it regulated conduct rather than alcohol sales, it was required to review the constitutionality of the law under the standards pertaining to regulations that, on their face, restrict conduct for its communicative element. As Justice Marshall pointed out in his dissent to California v. LaRue, 409 U.S. 109, 131, 138, 93 S.Ct. 390, 403, 407, 34 L.Ed. 2d 342, 359, 363 (1972), a case concerning California laws banning sexual conduct in bars and night clubs:
“[I]n order to restrict speech, the State must show that the speech is ‘used in such circumstances and [is] of such a nature as to create a clear and present danger that [it] will bring about the substantive evils that [the State] has a right to prevent.’ (Citations omitted.)
“Classifications that discriminate against the exercise of constitutional rights per se ... must be supported by a ‘compelling’ governmental purpose and must be carefully examined to insure that the purpose is unrelated to mere hostility to the right being asserted.”
The ordinance could not pass scrutiny under this test because, as the City acknowledged in its brief, it has failed to make a showing of governmental interest furthered by the law.
What I find most disturbing about the Majority’s thinly veiled attempt to uphold this ordinance at any price is its failure to take this opportunity to put some teeth into our state constitutional guarantee of freedom of expression. 1972 Mont. Const. Art. II, § 7. In voting *160 unanimously to include a specific provision for the freedom of expression in the Montana Constitution, the Bill of Rights Committee stated:
“Hopefully, this extension (of freedom of expression) will provide impetus to the courts in Montana to rule on various forms of expression similar to the spoken word and the ways in which one expresses his unique personality in an effort to re-balance the general backseat status of states in the safeguarding of civil liberties. The committee wishes to stress the primacy of these guarantees in the hope that their enforcement will not continue merely in the wake of the federal case law.” (Emphasis added.)
Bill of Rights Committe Proposal, II Mont. Const. Convention 630 (Feb. 23,1972.)
Although the committee expressed the hope that the Montana Constitution’s freedom of expression would give broader guarantees than the U.S. Supreme Court had accorded the right, this Court has refused to listen to this desire. Instead, the Majority today bestows lesser protection to the freedom of expression than that accorded by the federal court. The Majority has not required the City to demonstrate any governmental interest forwarded by this ordinance. Instead, it has placed the burden of proving unconstitutionality on Laedeke. And the standard the majority has demanded that he use, that of a reasonable doubt, is the most stringent standard of all. What a sad day it is when we allow a law that on its face constricts so fundamental a right to pass muster under the lowest possible scrutiny available.
The fact that Laedeke dances to a different choreographer should not be a reason to deny him, and inferentially all of us, the basic constitutional right to express our feelings whether they are about the flag, dancing or Groucho Marx.
I would reverse.