PRICES CORNER LIQUORS, INC.,
Plaintiff Below, Appellant,

v.

DELAWARE ALCOHOLIC BEVERAGE
CONTROL COMMISSION, Defendant
Below, Appellee.

No. 497, 1995.

Supreme Court of Delaware.

Submitted: Oct. 27, 1997.
Decided: Jan. 22, 1998.

Donna L. Schoenbeck (argued), and Janell
S. Ostroski, of Schoenbeck & Schoenbeck,
P.A., Wilmington, for Appellant.

Lawrence W. Lewis and C. Drue Chichi, Deputy Attorneys General, Wilmington, for Appellee.

Before VEASEY, C.J., WALSH, HOLLAND and HARTNETT, JJ., and JACOBS, Vice Chancellor,[1] constituting the Court en Banc.

VEASEY, Chief Justice:

This case presents for review the issue of whether or not a provision of the Liquor Control Act (the "Act") is unconstitutional. For purposes of establishing minimum separation requirements for liquor store locations, that provision makes a significant distinction between stores located in municipalities and those located outside incorporated cities and towns. A statute may be unconstitutional if it differentiates without a rational basis for doing so. We find, however, on the record now before the Court that there is a rational basis for distinguishing between incorporated and unincorporated areas for this purpose. Accordingly, the statute is constitutional in the face of the challenge presented here, and we affirm the judgment of the Superior Court.

### Procedural History

Plaintiff below-appellant Prices Corner Liquors, Inc. ("PC Liquors") appeals from a Superior Court judgment affirming the decision of the Delaware Alcoholic Beverage Control Commission (the "Commission") denying PC Liquors a liquor license. PC Liquors lawfully operated a liquor store from 1962 until October 1, 1995 at Prices Corner Shopping Center, 3216 Kirkwood Highway, an unincorporated area in New Castle County, near Wilmington. On or about March 14, 1995, PC Liquors received written notice from its landlord that its lease would not be renewed.

PC Liquors sought to move its store approximately 1500 feet to 1300 Centerville Road. Since PC Liquors' license for its store

at Prices Corner Shopping Center was not transferrable to the proposed location,[2] PC Liquors applied to the Commission for a new liquor license for 1300 Centerville Road. The Commission denied the application on the ground that the proposed location was too close to existing licensed establishments, and thus did not comply with the statute requiring that retail liquor stores in unincorporated areas maintain a distance of at least one mile from competitors. Liquor stores in incorporated areas may be located within one mile of an existing liquor store, provided that they are not located within 1200 feet. The applicable statutory provision is as follows:

### § 543.  Grounds for refusal of license.

\*      \*      \*

(d) The Commission shall refuse to grant a license for the sale of alcoholic liquor by any restaurant, tavern, taproom, hotel, store, or other establishment for consumption on or off the premises, when there is an existing licensed establishment of the same type within 1200 feet by accessible public road or street in any incorporated city or town, or within 1 mile by accessible public road or street in any unincorporated or rural area; provided, however, that if there is an existing licensed establishment less than 1 mile but more than nine tenths of 1 mile by accessible public road or street in any unincorporated or rural area, the Commission may, in its discretion, grant such license; and provided further, however, that the foregoing shall not apply:

(1) To any existing license or to the sale, transfer of ownership, or renewal thereof;

(2) To a club, hotel or restaurant for consumption of alcoholic liquors on the premises,

(3) To any holder of an existing license who desires to move the location of his license to a location within 500 feet thereof by accessible public road or

---

1. Sitting by designation pursuant to Del. Const., art. IV, § 12, and Supreme Court Rules 2 and 4(a).

2. By Delaware statute, the holder of an existing license may move "the location of his license to a

location within 500 feet thereof by accessible public road or street." 4 *Del. C.* § 543(d)(3). Its proposed move approximating 1500 feet, PC Liquors did not qualify for this exception.

street; provided, however, that such licensee located in a shopping center or shopping mall may move the location of his license any distance within the same shopping center or shopping mall, whether such center or mall consist of 1 or more than 1 separate buildings.[3]

On appeal to the Superior Court from the Commission, PC Liquors made two arguments: (1) that the minimum distance requirement of the Act is arbitrary and unconstitutional under the Due Process Clause of both the United States and the Delaware Constitutions; and (2) that discrimination between liquor stores based on whether they are located inside or outside of any incorporated city or town, mandated by Section 543(d), is arbitrary and lacking in a fair and substantial relation to the object of the legislation in violation of the Equal Protection Clause of the United States Constitution. The Superior Court affirmed the decision of the Commission and upheld the constitutionality of the statute. PC Liquors appeals to this Court.

### Facts

The original record before the Superior Court did not clearly reveal a supportable difference between incorporated and unincorporated areas for purposes of this analysis. Thus, there was a significant issue on that record whether or not there is a rational basis to justify a different treatment under the Act. Accordingly, after argument we remanded to the Superior Court

so that Court may further consider whether or not the incorporated status of a locality is an arbitrary basis on which to distinguish among applicants for liquor licenses. In particular, the Superior Court should develop a factual record to determine and provide support, if any, for the following statement in [its] November 13,

[1995] Opinion: "Liquor stores create a host of law enforcement challenges. The quantitative and qualitative differences between the policing provided by municipal police departments and their state and county counterparts form a rational basis for distinguishing them."[4]

The record developed in the Superior Court on remand is extensive. It contains statistical evidence and deposition testimony from a variety of law enforcement officers. Pivotal to the enforcement of the Act and the Commission's regulations promulgated thereunder is the law enforcement dimension. That is, the Act and the regulations govern most aspects of the liquor business. In the words of the Superior Court, they control "where, when and to whom liquor stores may sell alcohol."[5] The Superior Court found on the record before it on remand that alcohol is linked to many crimes, motor vehicle offenses and mishaps in Delaware. Some excerpts from the Superior Court's ultimate findings follow:

In 1996, liquor stores provided seventy-three percent of all alcohol sold in Delaware. It is reasonable to infer from that fact that liquor stores supply a significant amount of the alcohol that contributes to many offenses. To the extent that alcohol associated with crimes is obtained from liquor stores, the General Assembly is able to conclude that liquor stores present challenges to law enforcement.

\* \* \*

[I]n the expert's[6] view and speaking for Delaware's law enforcement community without contradiction, liquor stores provide a large percentage of the alcohol implicated in major crimes.

\* \* \*

[T]he record now makes clear that alcohol and crime are closely related, and alco-

---

3. 4 *Del. C.* § 543(d).

4. *Prices Corner Liquors, Inc. v. Del. Alcoholic Beverage Control Comm'n.* Del.Supr., No. 497, 1995, Veasey, C.J. (March 19, 1997) (ORDER).

5. *Prices Corner Liquors, Inc. v. Del. Alcoholic Beverage Control Comm'n.* Del.Super., C.A. No. 95A–04–017 (Sept. 12, 1997) (Mem.Op.).

6. The expert referred to here is Colonel John McCarnan, Police Chief, former Deputy Attorney General and former Director of the Commission. There were a number of additional police experts on whose testimony the court relied.

hol-related offenses pose a significant threat to Delawareans. It is equally proven that liquor stores sell considerable quantities of alcohol to the public. It is reasonable for the General Assembly to infer from the proven facts concerning alcohol-related crimes and alcohol distribution that liquor stores are part of the challenge generally posed by licensed alcohol retailers.

\* \* \*

[C]onsidering the demonstrated volume of alcohol being dispensed by liquor stores, the shocking statistics tying alcohol to the entire spectrum of criminal conduct, and the law enforcement community's conclusions about liquor stores' association with those statistics, it is reasonable to believe that liquor stores create a host of law enforcement challenges.[7]

The law enforcement challenges presented by liquor stores are well established in the remand record, but the analysis does not end there. The issue is whether or not there is a rational basis for the significant distinction between the minimum distance requirement from one liquor store to the next in incorporated municipalities (1200 feet) and that applicable outside such areas (one mile). On this issue, the trial court's findings, which are dispositive, are as follows:

The issue ... is whether it is rational to draw a distinction between law enforcement by police forces in municipalities as compared to the two departments serving the unincorporated areas in Delaware. This issue, of course, focuses on merely one of the several putative bases for the legislature's having established different minimum distances between municipal and county liquor stores.

\* \* \*

[I]t is unclear to what extent, if any, the General Assembly was concerned about law enforcement issues when it enacted the minimum distance requirements. It may be that the statute was aimed at any or all

of the other [rationales] behind it, none of which is discussed here.

\* \* \* \* \* \*

The record is clear that there are meaningful differences between municipal police forces and the two departments that police Delaware's unincorporated areas, the Delaware State Police and the New Castle County Police Department. Colonel McCarnan summarized the differences:

[T]ypically the difference between municipal, county and state police operations is that municipal areas tend to be much smaller in size. Population tends to be compressed much more densely within the boundaries of the municipality. The ratio of police officers to citizens served is normally higher in municipal areas than it is in nonincorporated areas of the state. And the amount of time it takes a police officer to get to the scene of a complaint within a municipal area is normally better than in the unincorporated areas, principally because of the distances the police officer is required to respond once they have been notified of a complaint and because of the lower ratio of police officers to citizens served.

Beyond the fact that Colonel McCarnan's opinions, based as they are on a life in state, city and county law enforcement, are substantial evidence, there is also testimonial and statistical evidence that bears out his views.

\* \* \*

The Court recognizes that there is room to argue against, or at least to minimize, the police departments' differences.

\* \* \*

[E]ven if the evidence does not support the statute's rationale in every conceivable instance, that happenstance does not render the General Assembly irrational for accepting a generality in favor of its exceptions.

\* \* \*

The Court is not sitting as a super-legislature. For present purposes it is enough to

---

7. Mem. Op. at 3–8.

find, as the Court does, that the General Assembly has a reasonable basis to believe that municipal police departments generally respond faster to calls for assistance, they usually are closer to the people they serve, and they typically are more proactive than their state and county counterparts. Those differences form one of the several justifications for allowing liquor stores to be located closer to each other in municipalities as opposed to unincorporated areas.

*    *    *

The Court [finds] that, even if minimum distance requirements appear arbitrary at times and theoretically may not be the best way to promote the public's welfare, they are rational in light of the current record.[8]

### Constitutional Analysis

■ Under the Twenty-first Amendment to the United States Constitution, the States have plenary powers within their boundaries to regulate the time, place, and manner in which alcoholic beverages are sold and dispensed.[9] Delaware regulates alcohol under the Act.[10] The two stated purposes of the Act are: (1) that alcoholic liquor shall be made available to the inhabitants of Delaware, and (2) that the business of distributing the same, often looked upon as a source of evil, shall at all times be rigidly controlled in the interest of the general welfare.[11] A license to sell alcoholic beverages in Dela-

ware is not a legal or constitutional right, but only a temporary revocable permit issued pursuant to the State's policing powers.[12]

■ PC Liquors contends that the significant difference in the minimum distance requirements based on a liquor store's location is arbitrary and unconstitutional under the Equal Protection Clause of the United States Constitution and the Due Process Clauses of both the United States and Delaware Constitutions. Unless a statutory classification involves a fundamental right or draws distinctions based on a suspect classification, the constitutionality of the statute is presumed and the classification need only relate rationally to a legitimate state interest.[13]

■ The Superior Court was quite correct in observing that courts are not super-legislatures. It is not a proper judicial function to decide or even to express an opinion on what is or is not wise legislative policy.[14] When examining statutory distinctions that do not involve suspect classifications or limit fundamental rights, our inquiry is confined to whether the legislative decision is rationally related to *any* legitimate governmental objective or purpose.[15]

■ Furthermore, a conceivable objective underlying a challenged statute may not necessarily be the basis actually used by the legislature (even if that basis could be ascertained).[16] As long as there is some rational relationship between a classification and a legitimate state interest, the statute will not

---

8. *Id.* at 8–13.

9. *New York State Liquor Auth. v. Bellanca*, 452 U.S. 714, 715, 101 S.Ct. 2599, 2600, 69 L.Ed.2d 357 (1981).

10. 4 *Del. C.* § 101 *et seq.*

11. *Wilmington Country Club v. Del. Liquor Comm'n*, Del.Super., 91 A.2d 250, 253–54 (1952).

12. *Darling Apartment Co. v. Springer*, Del.Supr., 22 A.2d 397, 401 (1941).

13. *Abrams v. State*, Del.Supr., 689 A.2d 1185, 1188 (1997); *Lowicki v. Unemployment Ins. Appeal Bd.*, Del.Supr., 460 A.2d 535, 538–39 (1983); *cf.* 22 *Del. C.* § 110 (regulating the location of adult entertainment establishments).

14. *See Konstantopoulos v. Westvaco Corp.*, Del. Supr., 690 A.2d 936, 940 (1996) ("It is not our

role to assume the prerogative of the General Assembly.").

15. *Lowicki*, 460 A.2d at 539; *Gotleib v. State*, Del.Supr., 406 A.2d 270, 275 (1979) ("When neither a fundamental right nor a suspect class is involved, a legislative classification will be sustained unless it is 'patently arbitrary' and bears no rational relationship to a legitimate governmental interest."); *cf. Sinclair Oil Corp. v. Levien*, Del.Supr., 280 A.2d 717, 720 (1971) (holding that the business judgment rule protects a good faith decision of board of directions if it "can be attributed to any rational business purpose").

16. *Heller v. Doe*, 509 U.S. 312, 320, 113 S.Ct. 2637, 2642, 125 L.Ed.2d 257 (1993); *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 315, 113 S.Ct. 2096, 2102, 124 L.Ed.2d 211 (1993).

be deemed unconstitutional.[17] The United States Supreme Court put it well in its 1993 decision upholding the distinctions in the Cable Communications Policy Act of 1984 (Cable Act):

> Whether embodied in the Fourteenth Amendment or inferred from the Fifth, equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against an equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.... This standard of review is a paradigm of judicial restraint.
>
> *      *      *
>
> Moreover, because we never require a legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature.
>
> *      *      *
>
> In other words, a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data.[18]

■ In the augmented record now before this Court, we are able to conceive a rational basis underlying the distinction between incorporated and unincorporated areas for purposes of the minimum allowed distance between liquor stores. It now appears from the record that: (1) the presence of liquor stores in any given community most likely contributes to the number of alcohol-related crimes, thereby stiffening the challenge faced by law enforcement; and (2) the ability of incorporated areas to provide municipal police forces may create an enhanced level of police protection in such areas as distinct from unincorporated ones, where there is usually more territory for state or county police to cover. This plausible difference in law enforcement capability provides a rational (even if analytically tenuous) basis upon which to distinguish between incorporated and unincorporated areas in licensing liquor stores.

■ In supplemental memoranda filed before this Court, PC Liquors attempts to negative the bases found in support of the legislative classification.[19] PC Liquors notes the absence in the record of any data pinpointing the exact relationship between alcohol purchased in stores and alcohol-related crimes. In addition, to rebut the qualitative distinction made between law enforcement in incorporated and unincorporated areas, PC Liquors cites the fact that not all incorporated areas have elected to have municipal police. PC Liquor's arguments are not enough to overcome the strong presumption of constitutional validity afforded legislative classifications under rational basis review. At best, PC Liquors has pointed out that the corporate status of a given locality may be an imperfect basis on which to distinguish among applicants for liquor licenses. Courts are constrained under the rational basis analysis to accept legislative decisions even when the fit between means and ends is less than ideal.[20] For this purpose, it does not matter whether we analyze the statute pursuant to various provisions urged under the United States Constitution or the Delaware Constitution. It is sustainable under all constitutional provisions asserted here.

### Conclusion

We hold that Section 543(d) of the Act withstands the minimal requirements of ra-

---

**17.** *Brank v. State,* Del.Supr., 528 A.2d 1185, 1190 (1987); *Justice v. Gatchell,* Del.Supr., 325 A.2d 97, 102 (1974) ("A statutory discrimination or classification will not be set aside if any state of facts reasonably may be conceived to justify it.").

**18.** *Beach Communications,* 508 U.S. at 313–15, 113 S.Ct. at 2101–02.

**19.** *See Beach Communications,* 508 U.S. at 315, 113 S.Ct. at 2102 ("[T]hose attacking the rationality of the legislative classification have the burden 'to negative every conceivable basis which might support it.' ").

**20.** *Heller,* 509 U.S. at 321, 113 S.Ct. at 2643.

tional basis review. Accordingly, we affirm the judgment of the Superior Court.