TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-08-00213-CV






Susan Combs, Comptroller of Public Accounts of the State of Texas, and Gregg Abbott,
Attorney General of the State of Texas, Appellants


v.


Texas Entertainment Association, Inc. and Karpod, Inc., Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT

NO. D-1-GN-07-004179, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING





D I S S E N T I N G O P I N I O N


 Because I believe that the statutory scheme at issue in this case should have been
reviewed using intermediate scrutiny rather than strict scrutiny and because I believe that the statute
does not violate the First Amendment, I respectfully dissent from the result reached by the majority. 
 As mentioned in Justice Henson's opinion, section 47.052 of the business and
commerce code provides as follows: "A fee is imposed on a sexually oriented business in an amount
equal to $5 for each entry by each customer admitted to the business." Tex. Bus. & Com. Code
Ann. § 47.052(a) (West Supp. 2008) (emphasis added). The code defines "sexually oriented
business" as follows:


a nightclub, bar, restaurant, or similar commercial enterprise that:


(A) provides for an audience of two or more individuals live nude entertainment or
live nude performances; and


(B) authorizes on-premises consumption of alcoholic beverages, regardless of
whether the consumption of alcoholic beverages is under a license or permit issued
under the Alcoholic Beverage Code.



Id. § 47.051(2) (West Supp. 2008); see also id. § 47.051(1) (West Supp. 2008) (defining "nude"). 
Accordingly, the code imposes a fee on businesses that provide nude erotic entertainment and permit
the consumption of alcohol on the their premises. By requiring all the conditions to be satisfied
before a fee may be imposed, the code necessarily exempts establishments that provide erotic
entertainment but do not allow for the consumption of alcohol or that allow alcohol consumption but
do not allow their erotic entertainers to perform fully nude. The code also requires that a large
portion of the fee collected be given to the State's sexual assault program fund. Id. § 47.054
(West Supp. 2008).


First Amendment

 The statute in question, by its terms, does not specifically impose restrictions on the
type of erotic entertainment performers may engage in or that patrons may observe. In other words,
the statute does not address the expressive nature of the entertainment at issue. Instead, the statute
affects the ability of businesses to combine the entertainment and the consumption of alcohol. 
Although no specific limits on expression are imposed, the statute still has First Amendment
implications because it affects the manner in which businesses may provide erotic expression. See
Illusions-Dallas Private Club, Inc. v. Steen, 482 F.3d 299, 307 (5th Cir. 2007). In light of this, I
would analyze the constitutionality of the statute by employing traditional First Amendment
jurisprudence; however, I would note that while this type of regulation does have First Amendment
implications, live erotic entertainment "falls only within the outer ambit of the First Amendment's
protection." City of Erie v. Pap's A. M., 529 U.S. 277, 289 (2000); see also Barnes v. Glen Theatre,
Inc., 501 U.S. 560, 584 (1991) (Souter J., concurring) (distinguishing between societal interest in
protecting erotic expression and greater interest in protecting "untrammeled political debate");
Doran v. Salem Inn, Inc., 422 U.S. 922, 932 (1975) (explaining that nude dancing at bars
"involves only the barest minimum of protected expression"); Ben's Bar, Inc. v. Village of Somerset,
316 F.3d 702, 707 (7th Cir. 2003) (noting that nude dancing is only given diminished protection
under First Amendment); see also Fantasy Ranch Inc. v. City of Arlington, 459 F.3d 546, 554
(5th Cir. 2006) (explaining that although live erotic entertainment is protected by First Amendment,
governments can regulate it). (1) 


Alcohol Prohibitions for Sexually Oriented Businesses

 As a preliminary matter, I would note that a state may, in an effort to combat
secondary effects associated with sexually oriented businesses, entirely prohibit the consumption of
alcohol within sexually oriented businesses. See Ben's Bar, 316 F.3d at 706, 728 (7th Cir. 2003)
(upholding constitutionality of ordinance that prohibited consumption of alcohol within sexually
oriented businesses); see also 181 South Inc. v. Fischer, 454 F.3d 228, 233-34 (3d Cir. 2006)
(concluding that regulation prohibiting erotic expression at locations licensed to sell alcohol did not
violate First Amendment). If a state may completely prohibit the consumption of alcohol within
sexually oriented businesses, it seems logical to assume that a state may also impose less exacting
alcohol restrictions on sexually oriented businesses provided that the restriction is also designed to
combat negative secondary effects. Cf. Pap's A. M., 529 U.S. at 301 (upholding city ordinance that
imposed restriction that was less onerous than complete ban on erotic dancing and noting that there
may be more than one method for government to choose to address serious problems associated with
sexually oriented businesses). 

 The statute at issue in this case imposes a fee on establishments providing
erotic entertainment and allowing their customers to consume alcohol. There can be little doubt that
a fee is less restrictive than an absolute ban, (2) and as discussed more thoroughly later, the statute was
designed to address potential negative secondary effects arising from the pairing of
erotic entertainment and alcohol consumption by providing revenue for the State's sexual assault
program fund. See 44 Liquormart, Inc. v. Rhode Island, 517 U.S. 484, 511 (1996) (stating
proposition that greater governmental powers include lessor ones); cf. New York State Liquor
Auth. v. Bellanca, 452 U.S. 714, 717 (1981) (explaining that state's ability to ban sale of alcohol
entirely encompasses lesser power to ban sale of alcohol at certain locations). (3) I can find no
compelling distinction between statutes designed to curb potential negative secondary effects by
prohibiting, in their entirety, the pairing of alcohol consumption and erotic entertainment and statutes
designed to curb unwanted secondary effects by imposing a fee on establishments allowing the
two activities that would render the later unconstitutional but the former constitutional.
Consequently, I fail to see how the majority can conclude that the statute at issue violates the
First Amendment. 


Intermediate Scrutiny Applies

 Once it has been determined that a statute regulates activity protected by the
First Amendment, courts must then determine what level of scrutiny to employ when reviewing the
statute. As a preliminary matter, I would note that courts often apply intermediate scrutiny to
governmental regulations of sexually oriented businesses. See Fantasy Ranch, 459 F.3d at 555
(5th Cir. 2006) (listing various instances in which courts have applied intermediate scrutiny); see
also 729, Inc. v. Kenton County Fiscal Court, 515 F.3d 485, 504 (6th Cir. 2008) (explaining that
regulations pertaining to sexually oriented businesses are reviewed under intermediate rather than
strict scrutiny due to "the peculiar 'secondary effects' associated with adult businesses"). When
determining whether to apply intermediate or strict scrutiny, courts look to the purpose of the
regulation at issue. Illusions, 482 F.3d at 308. If the statute "is intended to suppress expressions
contained in erotic dancing, then it is subject to strict scrutiny," but if the statute "has a purpose
unrelated to the suppression of speech, then it is subject to intermediate scrutiny." Id. 

 Although the statute at issue in this case mentions "live nude entertainment" and "live
nude performances," the statute imposes no direct limitation on the type of expression that may be
exhibited through erotic entertainment. Cf. id. at 309 (explaining that fact that statute "references
content" does not necessarily mean that statute is "intended to suppress speech, even without a
legislative record to suggest a purpose unrelated to speech"). Moreover, it only imposes a fee if a
sexually oriented business decides to pair erotic entertainment with the consumption of alcohol. In
other words, a business may avoid any imposition of the fee described in the statute by not allowing
its customers to consume alcohol. See id. (noting that fact that sexually oriented business could
remove itself from reach of regulation by not allowing alcohol consumption weighs in favor of
determination that regulation should be reviewed under intermediate scrutiny). Accordingly, the
statute seems concerned with the regulation of alcohol or the regulation of the pairing of alcohol and
erotic entertainment rather than the suppression of any specific erotic expression. Cf. Ben's Bar,
316 F.3d at 726 (explaining that regulation prohibiting consumption of alcohol within
sexually oriented business was "not a restriction on erotic expression, but a prohibition of
nonexpressive conduct (i.e., serving and consuming alcohol) during the presentation of
expressive conduct").

 For these reasons, I believe that the statute has a purpose unrelated to the suppression
of expression and is, therefore, subject to intermediate scrutiny. Cf. Sammy's of Mobile Ltd. v. City
of Mobile, 140 F.3d 993, 996 (11th Cir. 1998) (noting that ordinances prohibiting sale or consumption
of alcohol at sexually oriented business are content-neutral and should be analyzed under
intermediate scrutiny). 

 This conclusion is also supported by the fact that courts have reviewed regulations
pertaining to sexually oriented businesses and imposing more significant restrictions under
intermediate scrutiny. For example, courts have employed intermediate scrutiny when reviewing
regulations limiting the locations in which sexually oriented businesses may operate. See, e.g., City of
Los Angeles v. Alameda Books, Inc., 535 U.S. 425, 440 (2002) (plurality opinion) (applying
intermediate scrutiny to ordinance that prohibited more than one sexually oriented business
per building and did not contain a provision exempting preexisting businesses); Renton v. Playtime
Theatres, Inc., 475 U.S. 41, 49 (1986) (utilizing intermediate-scrutiny test when reviewing regulation
limiting the locations in which adult movie theaters may operate). 

 In addition, courts have also employed intermediate scrutiny when reviewing
limitations placed on actual erotic expression. See, e.g., Fantasy Ranch, 459 F.3d at 557 (applying 
intermediate scrutiny to ordinance imposing proximity limitations, which required performers to be
six feet away from customers or to be separated from their customers by wall); Hang-On, Inc.
v. City of Arlington, 65 F.3d 1248, 1254-55 (5th Cir. 1995) (applying intermediate scrutiny when
reviewing statute prohibiting contact between erotic entertainers and customers). Furthermore, the
Supreme Court has applied intermediate scrutiny when reviewing the constitutionality of an ordinance
prohibiting public nudity, which had the effect of requiring erotic entertainers to wear minimal attire. 
Pap's A. M., 529 U.S. at 296-302. 

 Finally, courts have employed intermediate scrutiny to review complete bans on the
consumption of alcohol within sexually oriented businesses. See Ben's Bar, 316 F.3d at 722. 
Similarly, intermediate scrutiny has been applied to a statute that completely prohibited the issuance
or renewal of alcohol permits for sexually oriented businesses located inside dry political
subdivisions. Illusions, 482 F.3d at 303, 307, 310; see Tex. Alco. Bev. Code Ann. § 32.03(k)
(West 2007); see also Tex. Elec. Code Ann. § 501.021 (West Supp. 2008) (allowing voters to
determine whether to allow sale of alcohol within political subdivision). 

 The statute at issue in this case does not require sexually oriented businesses to move
from their current locations, imposes no direct limitation on the type of erotic expression entertainers
may provide, and does not completely ban the consumption of alcohol within a sexually oriented
business. Rather, the statute imposes a fee on a sexually oriented business only if it chooses to allow
the consumption of alcohol on its premises. Nothing in the cases relied upon by either of the other
two justices convinces me that a more exacting standard should be employed to review a statute that
has a more modest impact on First Amendment expression than the regulations described above. 


The Statute Survives Intermediate Scrutiny

 Having determined that the statute in question in this case should be reviewed under
intermediate scrutiny, I would then determine whether the statute may be upheld under that level of
scrutiny. In the context at issue in this case, a regulation satisfies intermediate scrutiny if it was
issued "pursuant to a legitimate governmental power"; "does not completely prohibit
adult entertainment"; "is aimed not at the suppression of expression, but rather at combating negative
secondary effects"; and "is designed to" further a "substantial governmental interest and the
restriction on expressive conduct is no greater than is essential in furtherance of that interest." 
Illusions, 482 F.3d at 311. 

 There is no dispute that the legislature has the authority to regulate both alcohol
consumption and sexually oriented businesses. Cf. Ben's Bar, 316 F.3d at 722 (explaining that
regulation of alcohol consumption falls within state's police powers). In addition, as described
earlier, the statute in question does not completely ban erotic entertainment. Cf. California v. LaRue,
409 U.S. 109, 118-19 (1972) (upholding constitutionality of regulation that prohibited certain types
of erotic expression in bars and noting that state did not ban the expression entirely, but merely
prohibited it in establishments that allow for the consumption of alcohol). Consequently, the first two
elements are met. 

 Regarding the third element, as described previously, nothing in the statute directly
addresses any aspect of erotic expression; rather, the statute addresses the pairing of erotic expression
with the consumption of alcohol. Moreover, rather than prohibiting any particular act of expression,
the statute simply imposes a fee on establishments that desire to allow the consumption of alcohol
on their premises and that provide erotic entertainment.

 Furthermore, the statute attempts to address some of the potentially negative secondary
effects from the pairing of alcohol and erotic expression by using a portion of the total fees collected
to provide revenue for the State's sexual assault program fund. Additionally, the legislative history
for the statute demonstrates that the purpose of the statute was to provide funding for programs
alleviating the impact of secondary effects. See Senate Research Ctr., Bill Analysis, Tex. H.B. 1751,
80th Leg., R.S. (2007) (stating that fee will be used to fund "programs that relate to sexual assault
prevention, intervention, and research"); House Research Org., Bill Analysis, Tex. H.B. 1751,
80th Leg., R.S. (2007) (listing various sexual assault programs that money raised by fee could be used
for). Although the effect of the fee on potential secondary effects may be more attenuated than a
complete ban on alcohol consumption within businesses providing erotic entertainment would be, a
state must be given a reasonable opportunity to experiment with solutions to serious problems
affecting its populace. See Pap's A. M., 529 U.S. at 301. 

 In light of the preceding, I would conclude that the statute is aimed at combating
negative secondary effects and is not aimed at the suppression of expression. Cf. Fantasy Ranch,
459 F.3d at 557 (concluding that intermediate scrutiny was appropriate because the ordinance was
"predominately targeted to the prevention of secondary effects, not to the suppression of symbolic
expression"). For the reasons that follow, I would also conclude that the fourth element is satisfied. 

 To satisfy the "substantial interest" requirement of the final element, the State must
present some evidence demonstrating a connection "between the combination of alcohol
[consumption] and erotic dancing and negative secondary effects." Illusions, 482 F.3d at 312-13; see
Fantasy Ranch, 459 F.3d at 561 (requiring only that regulation be supported by evidence that could
reasonably be viewed as relevant to effects in question). However, the burden on the State is very
light, Illusions, 482 F.3d at 312, and the State is not required to prove that its regulation is the only
way to combat potential negative secondary effects, see Alameda Books, 535 U.S. at 437. 

 The link between sexually oriented businesses and negative secondary effects has been
discussed in various cases, Pap's A.M., 529 U.S. at 300 (noting that crime and other safety issues are
caused by "presence of nude dancing establishments"), and courts have also identified a state's
interest in combating these effects as a substantial interest, see, e.g., Barnes, 501 U.S. at 583 (Souter,
J., concurring) (concluding that states have substantial interest in preventing negative secondary
effects associated with sexually oriented businesses). In fact, the Supreme Court has reasoned that
governments are not required to obtain new evidence regarding negative secondary effects when
passing new regulations for sexually oriented businesses and may instead rely on evidence previously
discovered, including evidence summarized in prior cases. Pap's A.M., 529 U.S. at 296-97. In
addition, the legislature has specifically identified a link between sexually oriented businesses and
negative secondary effects. In particular, the legislature has determined that it is appropriate to
impose regulations on sexually oriented businesses that are not imposed on other businesses because
"sexually oriented businesses may be detrimental to the public health, safety, and welfare by
contributing to . . . the growth of criminal activity." Tex. Loc. Gov't Code Ann. § 243.001(a)
(West 2005). 

 Although the link between sexually oriented businesses and negative secondary effects
has been previously established, evidence was also presented at trial suggesting a link between
sexually oriented businesses and the types of behavior that the sexual assault fund is designed to
combat. See Barnes, 501 U.S. at 582 (Souter J., concurring) (explaining that when determining
whether statute is constitutional, courts should focus on whether there is current governmental interest
and not on whether interest was thoroughly articulated when regulation was issued); Fantasy Ranch,
459 F.3d at 560 (stating that governments may justify enactment of regulation with evidence
presented at trial). In fact, the district court found that the State "presented persuasive trial evidence
supporting a possible link between the business activity subject to the tax and the secondary effects
addressed by the sexual assault program fund." Specifically, expert testimony was introduced stating
that viewing erotic entertainment while consuming alcohol increases the likelihood that sexually
assaultive behaviors might ensue. Moreover, various expert witnesses also stated that it was
reasonable for legislators to conclude that there is a causal link between viewing erotic entertainment
while consuming alcohol and sexually assaultive behavior. 

 For these reasons, I would conclude that the State has a substantial interest in
combating negative secondary effects and that the statute at issue furthers that interest. See Illusions,
482 F.3d at 312 (explaining that courts must determine whether substantial interest exists and whether
regulation facilitates that interest). 

 Regarding the restrictive component of the final element, as mentioned previously, the
statute at issue imposes no affirmative ban on any expressive conduct. Instead, the statute imposes
a fee on establishments providing erotic entertainment that also allow their patrons to consume
alcohol. Nothing prohibits businesses from continuing to provide erotic entertainment and allow
patrons to consume alcohol provided that the businesses pay the fee. Alternatively, businesses may
continue to provide erotic entertainment without paying the fee if they stop allowing their customers
to consume alcohol or if they require their performers to wear minimal clothing. See Pap's A.M.,
529 U.S. at 301 (commenting that requiring performers to wear minimal clothing has de minimus
impact on erotic expression). 

 Given that the statute does not directly target any type of expressive conduct, that the
statute provides multiple avenues in which businesses may continue providing erotic entertainment,
and that courts have upheld other regulations actually limiting the type of erotic expression that may
be conveyed, see id. at 284, 301 (upholding ordinance requiring dancers to wear minimal attire while
engaged in erotic entertainment); Hang On, 65 F.3d at1256-57 (stating that ordinance prohibiting
contact between customers and erotic performer did not burden protected expression more than is
essential to "interest in preventing prostitution, drug dealing, and assault"), I would conclude that the
statute's restriction on expressive conduct is no greater than is essential. 

 Having determined that all four prongs of intermediate scrutiny were satisfied, I would
hold that section 47.052 of the business and commerce code does not violate the First Amendment
of the federal constitution. (4) 



 ___________________________________________

 David Puryear, Justice

Before Chief Justice Jones, Justices Puryear and Henson 

Filed: June 5, 2009

1. In her opinion, Justice Henson agrees that the type of expressive conduct at issue in this
case only barely falls within the protections of the First Amendment. However, rather than
concluding that the conduct's placement on the edge of protected speech subjects the behavior to less
constitutional protection, she confusingly concludes that the type of expressive conduct at issue in
this case warrants the highest judicial scrutiny, presumably higher than that afforded to behaviors
more truly expressive in nature, to prevent unfair suppression. 
2. Regardless of the amount of the fee, the imposition of a fee for engaging in certain
activities is less restrictive than banning the activity in its entirety because individuals have the
option of engaging in the activity by paying the fee. Although businesses may challenge the amount
of the fee as being excessive, those arguments are fundamentally different than challenging the
State's authority to impose the fee at all. 
3. Justice Henson tries to dismiss the State's "greater power includes the lesser power" by
relying on a hypothetical described in Nollan v. California Coastal Comm'n, 483 U.S. 825 (1987). 
In that case, the Supreme Court noted that a state could prohibit people from shouting the word "fire"
in crowded theaters without violating the First Amendment because the prohibition would fall within
a state's power to protect the public safety. Id. at 837. However, the Court also theorized that a state
could not adopt the ban but also allow individuals to violate the ban if they chose to contribute $100
to the state treasury. Id. The Court noted that the second situation would amount to a lesser
restriction than a total ban but also concluded that the addition to the ban would be unrelated to the
purpose of protecting the public safety and would, in fact, alter the purpose of the ban. Id. In effect,
the Court reasoned that the imposition of the fee was improper because imposing the fee would not
further the state's interest in encouraging public safety. In other words, the Court determined that
"the condition substituted for the prohibition [would] utterly fail[] to further the end advanced as the
justification for the prohibition." Id. 


 The fee at issue in this case is unlike the one described above because the fee in this case is
designed to further the same interest that a total ban on erotic entertainment and alcohol consumption
would accomplish: minimizing potential negative secondary effects resulting from the consumption
of alcohol and the viewing of erotic entertainment. Accordingly, the fee at issue in this case is
actually more similar to the other hypothetical described in Nollan, in which the Court theorized that
because a state could refuse to issue a building permit in order to protect public's interest in a beach,
the State could also legitimately grant the permit but impose limitations designed to protect the
public's interest in that property. Id. at 836-37. 
4. Because the district court concluded that the statute violated the First Amendment, it made
no determination regarding the Association's other attacks on the statute. Having found that the
statute does not violate the First Amendment, I would reverse the judgment of the district court and
remand the case for consideration of the other issues raised in the case.